UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WILLIAMS,

                    Petitioner,

v.                                                    Case Number: 07-CV-12318
                                                      Honorable Patrick J. Duggan
JAN E. TROMBLEY,

                    Respondent.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND PETITION AND DENYING PETITION FOR A WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 16, 2009.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
           UNITED STATES DISTRICT COURT JUDGE

Petitioner Gary Williams ("Petitioner"), a state inmate currently incarcerated

at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a pro

se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting

that he is being held in violation of his constitutional rights.  Petitioner challenges his

conviction, following a jury trial in Wayne County Circuit Court, of the following counts:

assault with intent to commit murder, Mich. Comp. Laws § 750.83; assault with intent to

do great bodily harm less than murder, Mich. Comp. Laws § 750.84; two counts of

felonious assault, Mich. Comp. Laws § 740.82; felon in possession of a firearm, Mich.

Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony,

second conviction, Mich. Comp. Laws § 750.227b.

Petitioner filed the pending petition on May 30, 2007.[1]  Petitioner asserts

constitutional improprieties in the jury selection process (Claim I), that the state trial

court erred in admitting certain witnesses' identification testimony (Claim II),

prosecutorial misconduct (Claim III), improper jury instructions (Claim IV), sentencing

errors (Claim V), and entitlement to a new trial and *Brady* violations based upon newly-

discovered evidence (Claim VI).  Respondent has filed a response to the petition.

Petitioner thereafter, on March 12, 2009, filed a motion to amend his petition.  For the

reasons set forth below, the Court grants in part and denies in part Petitioner's motion to

amend.  The Court grants Petitioner's request to delete Claim V and modify Claim VI

from his original petition.  The Court denies Petitioner's request to add a new Claim VI

regarding sufficiency of the evidence because the claim lacks merit.  Finally, the Court

denies the amended petition requesting a writ of habeas corpus and dismisses it with

prejudice.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

During the early morning hours of July 6, 2003, a single gunman shot five people

outside the Watts Club Mozambique in Detroit, Michigan (the "Club").  The shooting

occurred after the Club closed at 2:00 a.m. and while its parking lot was filled with

---

[1]After filing his petition, Petitioner retained counsel and, on October 18, 2007, stipulated to withdraw his pro se petition in order to file a petition prepared by his attorney.  Pursuant to the stipulation, the Court dismissed the action without prejudice on October 19, 2007.  Subsequently, Petitioner and Respondent stipulated to reinstate the originally filed petition and the Court issued an opinion and order reinstating the original petition on February 12, 2008.  It appears that Petitioner is again proceeding pro se.

people who were leaving the club or arriving to attend an after-hours party at a venue next door.

Roshedria King (a/k/a/ "Cedra"), the girlfriend of a dancer at the club, Dean Readus, was in the parking lot. Roshedria's twin sister, Roshandria King, also was in the parking lot. Roshandria dated Petitioner while they were in high school.

Prior to the shooting, Readus saw Roshandria get shoved and this led to an argument between Readus and the man who would later shoot him. This man left the scene and Readus began arguing with another man. Immediately thereafter, the man with whom Readus had the initial argument returned, jumped onto a metal rail that surrounded the parking lot, and began shooting. Readus was approximately fifteen feet from the shooter when he opened fire. Readus was struck three times. Several other individuals in close proximity to Readus also were shot, including Melanie McIver, Maurice Napier, and Ferdell Pitts. Readus, McIver, Napier and Pitts were hospitalized; they all survived.

Within a few days of the shooting, Detroit Police Officer Pamela Walker presented photo arrays to Readus and McIver. Detroit Police Department Sergeant ElHage presented photo arrays to Angela Hicks and Roshandria King. Detective ElHage also questioned Aubrey Hicks and Roshedria King. The investigation led police to view Petitioner as the prime suspect in the shooting.

Readus, Angela Hicks and Roshandria King identified Petitioner as the shooter from the photo arrays they were shown. Although she later recanted, Roshandria initially told investigators that she had known Petitioner for six years, had been in a

3

relationship with him, and witnessed him shoot Readus.  Petitioner was not apprehended until over a year after the shooting, when he was arrested by the FBI Fugitive Task Force on or around October 22, 2004.

Petitioner's preliminary examination was held on November 17, 2004, and he was arraigned on November 24, 2004.  Petitioner was represented at both proceedings by retained counsel.  The state charged Petitioner with six counts each of assault with intent to commit murder in violation of Mich. Comp. Laws § 750.83, the lesser necessarily-included offenses of assault with intent to commit great bodily harm less than murder in violation of Mich. Comp. Laws § 750.84, and felonious assault in violation of Mich. Comp. Laws § 740.82.  The state also charged Petitioner with one count each of felon in possession of a firearm in violation of Mich. Comp. Laws § 750.224f and possession of a firearm during the commission of a felony, second conviction, in violation of Mich. Comp. Laws § 750.227b.

On February 28, 2005, following a four day trial, a jury found Petitioner guilty of the following six counts: assault with intent to murder as to Readus (Count 1); felonious assault as to McIver and Napier (Counts 2 and 3, respectively); assault with intent to commit great bodily harm less than murder as to Pitts (Count 4); felon in possession of a firearm (Count 5); and felony firearm (Count 6).  On Marcy 14, 2005, the trial court sentenced Petitioner to a term of imprisonment of twenty-five to sixty years on Count 1, two to four years on Counts 2 and 3, six to ten years on Count 4, three to five years on Count 5, and 5 years on Count 6.  The court ordered Counts 1 through 5 to be served concurrently to each other and consecutively to Count 6.

4

Petitioner thereafter filed a direct appeal in the Michigan Court of Appeals, raising the following issues:

    I.    THE TRIAL COURT VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO EQUAL PROTECTION AND A JURY DRAWN FROM A CROSS-SECTION OF THE COMMUNITY. US CONST AM VI, XIV.

    II.    DEFENDANT WAS DENIED A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF TAINTED IDENTIFICATIONS. US CONST AM XIV.

    III.    THE PROSECUTOR DENIED DEFENDANT A FAIR TRIAL BY VOUCHING FOR THE CREDIBILITY OF THE POLICE INVESTIGATOR. US CONST AM XIV.

    IV.    DEFENDANT WAS DENIED HIS RIGHT TO A PROPERLY INSTRUCTED JURY BY THE TRIAL COURT'S REFUSAL TO INSTRUCT ON CIRCUMSTANCES MITIGATING ASSAULT WITH INTENT TO MURDER TO ASSAULT WITH INTENT TO DO GREAT BODILY HARM, AND BY ITS DENIAL OF THE REQUESTED INSTRUCTION ON THE LESSER OFFENSE OF RECKLESS DISCHARGE OF A FIREARM. US CONST AM XIV.

    V.    DEFENDANT MUST BE RESENTENCED WHERE OV 4 AND OV 12 WERE SCORED ERRONEOUSLY.

    VI.    DEFENDANT MUST BE GRANTED A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE, WHICH WAS NOT AVAILABLE AT TRIAL EITHER BY FAILURE OF THE PROSECUTOR TO PRODUCE THE EVIDENCE OR FAILURE OF TRIAL COUNSEL TO EXERCISE DUE DILIGENCE AND/OR PRODUCE THE EVIDENCE.

The court of appeals affirmed Petitioner's convictions and sentence. *People v. Williams*, No. 261896, 2006 WL 2987625 (Mich. Ct. App. Oct. 19, 2006) (unpublished). Petitioner filed a motion for leave to appeal with the Michigan Supreme Court, raising the same

5

issues that he raised in the court of appeals.  The Supreme Court denied Petitioner

leave to appeal on March 26, 2007.  *People v. Williams*, 477 Mich. 1055, 728 N.W.2d

430 (2007).  Petitioner filed his pending petition for a federal writ of habeas corpus on

May 30, 2007.

## II.    MOTION TO AMEND

As noted above, on March 12, 2009, Petitioner filed a motion to amend his

petition.  The amended petition would (1) delete Claim V alleging sentencing errors, (2)

modify Claim VI by omitting that portion of the claim requesting a new trial based upon

newly-discovered evidence, and (3) present a new claim challenging the sufficiency of

the evidence based upon the newly-discovered evidence.

Under Federal Rule of Civil Procedure 15, which is made applicable to habeas

proceedings by 28 U.S.C. § 2242, Federal Rule of Civil Procedure 81(a)(4), and Habeas

Corpus Rule 11, parties may amend a pleading once as a matter of course before a

responsive pleading is served.  Fed. R. Civ. P. 15(a)(1)(A).  Petitioner asserts that he

should be allowed to add a new claim because Respondent has not yet answered the

petition.  This assertion is in error, as Respondent filed an answer on May 12, 2008.

Otherwise, a party may amend a pleading with the opposing party's written consent or

with leave of the court.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a) provides that "[t]he court

should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  Nevertheless,

several factors have been found to justify the denial of a motion to amend, including the

futility of the amendment.  *See Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998)

(quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).

6

As Respondent argues that Claims V and VI in the initial petition are not cognizable, the Court is granting Petitioner's request to delete or modify those claims. With respect to Petitioner's request to add a new claim, the Court denies Petitioner's request because the amendment would be futile.[2]

In his proposed Claim VI, Petitioner asserts that Readus' credibility could have been undermined at trial by introducing evidence from Readus' newly-discovered medical records that he was intoxicated at the time of the shooting and was "slightly combative." Petitioner argues that there otherwise was insufficient evidence to support the identification of Petitioner as the shooter. As discussed further below, there was sufficient evidence to support the jury's determination that Petitioner was the gunman. Other witnesses identified Petitioner as the shooter. Moreover, as the Michigan Court of Appeals found, Readus admitted at trial that he consumed one or two alcoholic drinks before the shooting occurred. (2/23/05 Tr. at 175-76, 203-05.) Although Readus claimed that he was not intoxicated, defense counsel challenged this assertion during his cross-examination. (*Id.* at 203-05.) With respect to Readus' combativeness, Readus admitted at trial that he was mad, had "an attitude," closed his fists, and was prepared to defend himself when he encountered Petitioner. (*Id.* at 212-13). Thus, as the

---

[2]Additionally, Petitioner's motion to amend was filed after the expiration of the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). Therefore, Petitioner's proposed amendment is out of time unless it "relates back" to the original, timely-filed petition. *Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 2569 (2002). The Court concludes that Petitioner's proposed Claim VI does not relate back to the original petition because it does not arise from a "common core of operating facts" as his originally asserted claims. *Id.* at 659, 125 S. Ct. at 2572.

Michigan Court of Appeals found, the indication in the medical records that Readus was "slightly combative" would have been cumulative and of minimal impeachment value.

## III.    STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case."  *Id.* at 413, 120 S. Ct. 1523.  A state

court decision "based on a factual determination will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state-

court proceeding, § 2254(d)(2)."  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct.

1029, 1041 (2003).

IV.   **DISCUSSION**

  **A.  Claim I - Challenge to the Jury Composition and Jury Pool**

  Petitioner asserts that the prosecutor improperly excluded three African-

Americans from his jury on the basis of race (Jurors 8, 11 and 13) and one of those

jurors also on the basis of age (Juror 11).

  **1.   Race-Based *Batson* Claim**

  In *Batson v. Kentucky*, 476 U.S. 79, 88-89, 106 S. Ct. 1712, 1718 (1986), the

Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment

prohibits a prosecutor from using peremptory juror challenges in a racially discriminatory

manner.  To determine whether a *Batson* violation has occurred, a court applies a three-

step analysis:

> First, the trial court must determine whether the defendant
> has made a prima facie showing that the prosecutor
> exercised a peremptory challenge on the basis of race. . . .
> Second, if the showing is made, the burden shifts to the
> prosecutor to present a race-neutral explanation for striking
> the juror in question. . . . Third, the court must then
> determine whether the defendant has carried his burden of
> proving purposeful discrimination. . . .

9

*Rice v.* Collins, 546 U.S. 333, 338, 126 S. Ct. 969, 973-74 (2006) (citing *Batson*, 476

U.S. at 96-98, 106 S. Ct. 1712).  To demonstrate a prima facie case at the first step, the

defendant must show that (1) he or she is a member of a cognizable group; (2) the

prosecutor has exercised peremptory challenges against members of defendant's race;

and (3) the relevant circumstances give rise to an inference of purposeful discrimination.

*Batson*, 467 U.S. at 96, 106 S. Ct. at 1723.  Relevant circumstances could include a

pattern of strikes against black jurors, and the prosecutor's questions and statements

during voir dire examination and when striking potential jurors.  *Id.* at 96-97, 106 S. Ct.

at 1723.

　　　　In this case, the trial court found and the appellate court affirmed that Petitioner

failed to establish a prima facie case of race discrimination.  After setting forth the

applicable three-step analysis, the Michigan Court of Appeals reasoned:

> Defendant is African-American, and thus a member of a
> cognizable racial group.  The prosecutor exercised two
> peremptory challenges and excused veniremembers 8 and
> 11, who are African-American.  In the instant case, the
> prosecutor exercised all 12 of his peremptory challenges,
> and two of the jurors sworn were African-American.  There
> does not appear to be a pattern of strikes against
> African-American veniremembers, and the prosecutor did
> not ask any questions or make any statements during voir
> dire that support an inference of discrimination.  The mere
> fact that the prosecutor used two peremptory challenges to
> excuse African-American veniremembers is insufficient to
> establish a prima facie showing of discrimination. . . .  We
> therefore conclude that defendant failed to establish a prima
> facie case of purposeful discrimination as defined in *Batson*.
> . . .  Accordingly, the prosecutor was not required to
> articulate a race-neutral explanation for his peremptory
> challenges, and the trial court was not required to determine
> whether defendant had proved purposeful discrimination. . . .

> . . .
> Defendant also challenges the removal of veniremember 13,
> who is African-American.  Veniremember 13 was excused
> for cause after he repeatedly stated that he did not believe
> he could be fair and impartial because he had two family
> members who had been convicted of crimes and one was
> "locked up."  Defendant frames his argument in a *Batson*
> context, which is misguided because *Batson* applies only to
> peremptory challenges.  Defendant has failed to explain how
> a veniremember's removal for cause violates the Fourteenth
> Amendment or is otherwise improper.

*People v. Williams*, 2006 WL 2987625 at *2.  This conclusion was neither "contrary to,

or involved an unreasonable application of, clearly established federal law," nor "an

unreasonable determination of the facts in light of the evidence presented in the State

court proceedings."  28 U.S.C. § 2254(d); *see also Rice*, 546 U.S. at 339, 126 S. Ct. at

974.

The fact that the prosecution exercised peremptory challenges to excuse two

African-American venire persons from the jury, standing alone, is insufficient to

establish a prima facie case of discrimination.  *See United States v. Sangineto-Miranda*,

859 F.2d 1501, 1521 (6th Cir. 1988); *see also Anderson v. Cowan,* 227 F.3d 893,

901-02 (7th Cir. 2000) (fact that prosecution used peremptory challenges to exclude two

African- American women from jury, without more, was insufficient to raise inference of

discrimination).  Petitioner has pointed to no facts, other than the striking of two

African-Americans from the jury (Jurors 8 and 11),[3] to support his *Batson* claim.  Of the

six African-Americans on the venire, two were excused for cause, two were subject to

the prosecutor's peremptory strikes, and two remained on Petitioner's jury.  The

_____

[3] Petitioner's inclusion of Juror 13 as part of his racial *Batson* claim is without
support given the uncontested fact that this juror was excused for cause.

11

prosecution did not question any of the potential jurors in an unusual, distinct, or discriminatory manner nor did the prosecution make any comments reflecting bias or discriminatory intent.  The prosecution used peremptory challenges to excuse potential white jurors, as well as the two potential black jurors at issue.  Petitioner therefore is not entitled to habeas relief on this claim.

### 2.    Age-Based *Batson* Claim

Petitioner also is not entitled to relief on his age-based *Batson* claim.  Petitioner argues that the prosecutor improperly struck Jurors 11 and 13 who were the "only black males even close to [Petitioner's] age."  (Am. Pet. at 11.)  The Michigan Court of Appeals found that Juror 13 was excused for cause (*see supra*) and otherwise rejected Petitioner's claim because he failed to develop it:

> Defendant also asserts that he had the right to a jury where the veniremembers were not stricken because of age and that the prosecutor failed to sustain his burden to provide age-neutral reasons.  However, he does not further develop this argument.  He provides no evidence of the age of the veniremembers or jurors, or any other evidence that any veniremembers were stricken on the basis of age.  An appellant may not simply announce a position or assert an error and leave it to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.

*People v. Williams*, 2006 WL 2987625 at *2 (internal citations and quotation marks omitted).

The United States Supreme Court has not extended *Batson's* protections to age discrimination.  *See United States v. Maxwell,* 160 F.3d 1071, 1075 (6th Cir. 1993) (declining to extend *Batson* to peremptory strikes based on age); *United States v.*

*Hibbler*, 193 Fed. Appx. 445, 451 (6th Cir. 2006) ("It is clear that age, as a general matter, is not a prohibited reason for excluding a juror with a peremptory challenge.") (citations omitted).  Therefore, even if Petitioner had factually developed this claim in the state courts, the Michigan Court of Appeals' decision is not contrary to any clearly established United States Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim.

> ### 3.     The Jury Pool

Petitioner also challenges the composition of the jury array from which his jury was ultimately chosen.  During the jury selection process, Petitioner's counsel argued that residents of the City of Detroit were under-represented in the jury array and that this was unfair because Petitioner was a Detroit resident.  (2/22/05 Tr. at 107-08.)  The trial court rejected Petitioner's challenge to the jury array, in part because Petitioner failed to present any evidence to support the challenge and appeared to be making a challenge to the composition of the particular jury panel chosen:

> THE COURT: . . .  But what I think I understand the gravamen of the complaint in this case is, is that there was not, in the defendant's opinion, a sufficient number of African Americans on this particular panel, which is different than a challenge to an array.  The array is everybody in the pool.
>
> If for instance there were three hundred jurors solicited for jury duty today and out of those three hundred . . . 150 were African Americans but on this particular panel the forty that were sent up were not African Americans, there would be nothing wrong with that array.  There's no infirmity in the array, because everybody knows that they're not – that it's computer generated and picked.  That's not a challenge to the array, that's a challenge to the result in this particular [petit] jury and what you have to choose from.  I have no

13

> knowledge and there's nothing on this record which indicates
> what's in the array.

(2/22/05 Tr. at 112-13.)  The Michigan Court of Appeals affirmed, providing:

> Defendant next contends that the trial court violated his right
> to a jury drawn from a fair cross-section of the community.
> We disagree. . . .  Defendant neither proffered nor presented
> any evidence concerning the representation of
> African-Americans on jury venires in general.  Because there
> is no evidence in the lower court record to support
> defendant's argument, this Court cannot conduct a
> meaningful review.

*People v. Williams*, 2006 WL 2987625 at *3.

The Sixth Amendment right to an impartial jury includes the right to a jury drawn from a "fair cross section of the community."  *Taylor v. Louisiana,* 419 U.S. 522, 526, 530, 95 S. Ct. 692, 695, 697-98 (1975).  There is "no requirement that petit juries actually chosen must mirror the community . . . but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."  *Id.* at 538, 95 S. Ct. at 702 (internal citations omitted).  A defendant challenging the jury pool must show the following to establish a prima facie violation of the fair cross section requirement:

> (1) that the group alleged to be excluded is a "distinctive"
> group in the community; (2) that the representation of this
> group in venires from which juries are selected is not fair and
> reasonable in relation to the number of such persons in the
> community; and (3) that this underrepresentation is due to
> systematic exclusion of the group in the jury-selection
> process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668 (1979).  Petitioner, as he did in the state courts, has not presented any evidence to support his assertion that the jury selection process was discriminatory.  Petitioner therefore has not shown that the state court's decision was contrary to or a misapplication of *Taylor* or *Duren*.  Petitioner therefore is not entitled to habeas relief on this claim.

      **B.**    **Claim II - Admission of Identification Testimony**

      Petitioner argues that the in-court identifications by Readus, McIver and Aubrey Hicks should have been suppressed because they were irreparably tainted by unconstitutionally suggestive pre-trial identification procedures.  "[A]n identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard,* 405 F.3d 459, 469 (6th Cir. 2005) (citing *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375 (1972); *Stovall v. Denno*, 388 U.S. 293, 301-02, 87 S. Ct. 1967, 1972 (1967)).  "'It is the likelihood of misidentification which violates a defendant's right to due process.'" *Howard*, 405 F.3d at 469 (quoting *Neil*, 409 U.S. at 198, 93 S. Ct. at 381-82). The analysis of a suggestive identification claim is two-part: the court first assesses whether the identification was unnecessarily suggestive; if so, the court assesses whether the identification was nevertheless reliable under the totality of the circumstances.  *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005). "[R]eliability is the lynchpin in determining the admissibility of identification testimony." *Manson v. Braithwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977).  The petitioner

15

bears the burden of showing that the identification was impermissibly suggestive. *Howard*, 405 F.3d at 469.

### 1.  Deon Readus

Petitioner filed a pre-trial motion to suppress Readus' identification.  Based on Readus' testimony at Petitioner's preliminary examination that Officer Walker showed him "a" photo, Petitioner argued Readus was not shown a photo array, but instead only one photo of Petitioner.  The trial court granted Petitioner's request for a "taint" hearing. At that hearing, Readus testified that Officer Walker showed him a piece of paper with many photos on it which, he explained, is what he meant at the preliminary examination and not that he had been shown a single photo.  Officer Walker corroborated this testimony.  The trial court found that Officer Walker showed Readus a photo array with six photos, that Readus picked out Petitioner's photo from the array, and that there was nothing suggestive or improper about the procedure.  (2/9/05 Tr. at 51-52.)  The Michigan Court of Appeals deferred to the trial court's factual finding and concluded that the photographic identification procedure used with Readus was not impermissibly suggestive.  *People v. Wiliams*, 2006 WL 2987625, at *4.

The trial court's factual determination must be presumed correct on habeas review unless the applicant rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).  This presumption applies as well to factual findings of a state appellate court made on its review of the state trial court record.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

16

To rebut the state courts' factual finding, Petitioner points only to Readus'
preliminary examination testimony that he was shown "a" photo.  The trial court and
appellate court found, however, that Readus clarified this testimony at the suppression
hearing and at trial when he explained that he was shown a single piece of paper
containing multiple photos.  This determination was not objectively unreasonable in light
of Readus' explanatory testimony and Officer Walker's corroborating testimony.
Petitioner therefore fails to satisfy his burden of providing clear and convincing evidence
that the state courts' factual finding was in error.  Petitioner therefore is not entitled to
habeas relief on this claim.

### 2.      Melanie McIver and Aubrey Hicks

Petitioner also filed a pre-trial motion to suppress McIver's identification based on
the fact that she was unable to identify the shooter shortly after the July 2003 shooting
when shown a photo array, but then identified Petitioner as the shooter at the November
2004 preliminary examination.  Petitioner argued that McIver's identification of Petitioner
at the preliminary examination was rendered unduly suggestive by the fact that she had
seen Petitioner in television coverage of Fourth of July 2004 festivities.  The trial court
determined that Petitioner was not entitled to suppression or even a taint hearing with
respect to McIver's identification because there was no state action involved in the
dissemination of Petitioner's image on television.  (2/9/05 Tr. at 7-27.)

The Michigan Court of Appeals assumed that McIver's identification of Petitioner
at the preliminary examination was unduly suggestive but nevertheless concluded that
there was an independent basis for the identification.  Specifically, the court relied on

17

the fact that McIver was only five to ten feet away from the shooter, the area was well-lit, and she accurately described the shooter's height, weight, clothes, and the gun to the police shortly after the shooting occurred. *People v. Wiliams*, 2006 WL 2987625, at *5-6. The court further found that, even if there was not a sufficient independent basis for McIver's identification, its admission was harmless because Readus and Angela Hicks properly identified Petitioner as the shooter and Roshandria King initially told the police that Petitioner was the shooter. *Id.* at *6.

With respect to Aubrey Hicks, Petitioner contends that her identification was unduly suggestive because she had not previously identified Petitioner as the gunman but did so at trial. Petitioner had moved for a mistrial when Hicks made this surprise in-court identification, but the trial court denied the motion. (2/23/05 Tr. at 152-60.) The court of appeals found the admission of Aubrey Hick's in-court identification to be harmless error for the same reason that it reached this conclusion with respect to McIver's identification. *People v. Wiliams*, 2006 WL 2987625, at *6.

For purposes of federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993). There is a narrow category of constitutional errors– considered "structural defects"– that are not subject to harmless error analysis because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 148, 126 S. Ct. 2557, 2564 (2006) (citation omitted). However "most

18

constitutional errors" are viewed as "trial errors" whose effect may be "'quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt.'" *Id.* at 148, 126 S. Ct. at 2563-64 *(*citations omitted). An error in admitting identification testimony is considered a "trial error" subject to harmless error analysis. *Wade v. United States*, 388 U.S. 218, 242, 87 S. Ct. 1926, 1939 (1967) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967)); *Solomon v. Curtis*, 21 Fed. Appx. 360, 363 (6th Cir. Oct. 21, 2001). To determine whether Petitioner is entitled to habeas relief on this claim, this Court must determine whether the Michigan Court of Appeals' decision is either contrary to or an unreasonable application of the harmless error analysis of *Brecht*.

Having reviewed the trial court record, this Court concludes that any error in admitting McIver's or Aubrey Hicks' identification testimony was harmless in light of other evidence that Petitioner was the gunman. Readus identified Petitioner as the shooter when shown a photo array shortly after the incident and at trial. His testimony at trial was unequivocal. (2/23/05 Tr. at 229, 233-34.) Angela Hicks, Aubrey's sister, also picked Petitioner out of a photo array immediately after the shooting and unequivocally identified Petitioner as the gunman at trial. (2/22/05 Tr. at 194-95.) Finally, Roshandria King, Petitioner's former girlfriend, initially told the police that Petitioner shot Readus and identified Petitioner in a photo array. (2/24/05 Tr. at 44-52, 59.) While she later recanted, there was extensive evidence from which the jury could conclude that she changed her testimony to protect Petitioner only after receiving numerous telephone calls from Petitioner and Petitioner's mother. (*Id.* at 52-57, 88-95.)

19

This identification evidence was sufficient to support the jury's finding that

Petitioner was the shooter, even without McIver's and Aubrey Hicks' identifications.

Thus any error in admitting McIver's and Aubrey Hicks' identifications was harmless.

*See United States v. Johnson*, 403 F.2d 1002, 1005 (6th Cir. 1968) (holding that any

error in admitting identification testimony was harmless where the record contained

other evidence of defendant's guilt, including positive identification of defendant by three

other eyewitnesses); *Solomon*, 21 Fed. Appx. at 363 (any error in admitting potentially

tainted in-court identification of defendant was harmless in light of other evidence of

defendant's guilt including his identification by two other witnesses).  The state court

decision on this issue therefore was neither contrary to clearly established federal law

nor based upon an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  As such, Petitioner is not entitled to habeas

relief on this claim.

### C.    Claim III - Prosecutorial Misconduct

Petitioner next asserts that the prosecutor engaged in misconduct by vouching

for the credibility of prosecution witness Sergeant Wedad ElHage.  Specifically,

Petitioner argues that this comment by the prosecutor during his closing argument

constituted improper vouching:

> Where is there any evidence to suggest that a Sergeant with
> the Detroit Police Department would jeopardize her career
> for someone that she doesn't even know?  Because if you
> think about the allegations that she's making, that's what
> she's asking you to believe.  That somehow Sergeant
> ElHage fabricated evidence against Mr. Williams.  And the
> question is, for what reason?  For what benefit was it for
> Sergeant ElHage to lie, to come to court and lie on Mr.

20

> Williams?  That's in essence what she's asking you to
> believe.

(2/24/05 Tr. at 209.)  Respondent replies that this claim is procedurally defaulted

because Petitioner failed to object to the prosecutor's comments during trial.

"[F]ederal courts are not required to address a procedural-default issue before

deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 215 (6th

Cir.2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S. Ct. 1517, 1523-24

(1997)); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus

may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State.")  "Judicial economy might counsel giving

the [other] question priority, for example, if it were easily resolvable against the habeas

petitioner, whereas the procedural-bar issue involved complicated issues of state law."

*Lambrix,* 520 U.S. at 525, 117 S. Ct. at 1523.  In this case, the Court finds that the

interests of judicial economy are best served by addressing the merits of this claim.[4]

On habeas review, "the relevant question is whether the prosecutors' comments

so infected the trial with unfairness as to make the resulting conviction a denial of due

process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986)

(quotation marks omitted).  "A prosecutor cannot improperly vouch for the credibility of

---

[4]On direct appeal, Petitioner argued that he was denied the effective assistance
of counsel by trial counsel's failure to object to the challenged remarks.  Petitioner has
not raised this issue in his amended habeas petition.  In any event, the claim is without
merit as the Court finds no prosecutorial misconduct and trial counsel could therefore
not be found ineffective for failing to object.  *Washington v. Hofbauer,* 228 F.3d 689, 699
(6th Cir. 2000) *(*no ineffective assistance of counsel for failing to object to prosecutor's
statements if statements do not amount to prosecutorial misconduct) (citations
omitted)).

his witnesses." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Francis,* 170 F.3d 546, 550 (6th Cir.1999). The state, however, is allowed to comment on defense counsel's argument(s) and trial strategy. *Slagle v. Bagley*, 457 F.3d 501, 522 (6th Cir. 2006). The giving of cautionary instructions factors into the calculus of determining whether fundamental fairness was denied. *Serra v. Mich. Dep't of Corr.,* 4 F.3d 1348, 1356 (6th Cir. 1993).

In making the challenged statement, the prosecutor was addressing Roshandria King's testimony that she initially wrote out a statement denying that she saw Petitioner shooting a gun, but that Sergeant ElHage tore up the statement and made her write a statement saying that she did see Petitioner shoot Readus. Sergeant ElHage denied that this transpired. During re-direct of Roshandria and in his later direct examination of Sergeant ElHage, the prosecutor elicited testimony from both witnesses that the officer would have no reason to fabricate evidence against Petitioner. During his re-cross of Sergeant ElHage, defense counsel questioned her about whether she tore up Roshandria's initial statement and told Roshandria what to write in her written statement. When instructing the jury, the court emphasized that the lawyers' statements and arguments are not evidence.

The Michigan Court of Appeals determined that the prosecutor's comments did not constitute improper vouching as they were responsive to defense counsel's attack

22

on Sergeant ElHage's credibility and that they did not result in an unfair trial so as to

deny Petitioner due process.  *People v. Williams*, 2006 WL 2987625 at *6.  The state

court's determination is neither contrary to nor an unreasonable application of Supreme

Court precedent.  On its face, the prosecutor's challenged comment does not express a

personal belief in ElHage's credibility; rather, it points out the lack of evidence

supporting defense counsel's argument that ElHage fabricated evidence against

Petitioner.  The statement was not improper.  *See United States v. Young*, 470 U.S. 1,

11, 105 S. Ct. 1038, 1044 (1985) (challenged prosecutorial comment must be viewed in

context that it was "invited response"; comment alone not enough to reverse criminal

conviction obtained in otherwise fair proceeding); *United States v. Bond*, 22 F.3d 662,

668 (6th Cir. 1994) (denying prosecutorial misconduct claim where challenged

statement did not express a personal belief in government witness's credibility).

Petitioner is not entitled to habeas relief on this claim.

> **D.     Claim IV - Jury Instructions**

Petitioner next claims that he was denied his constitutional right to a properly

instructed jury when the state trial court refused to include two jury instructions

Petitioner requested.

In order for habeas relief to be warranted on the basis of incorrect jury

instructions, a petitioner must show that taken as a whole, they were so infirm that they

rendered the entire trial fundamentally unfair.  *Estelle v. McGuire*, 502 U.S. 62, 72, 112

S. Ct. 476, 482 (1991).  The Supreme Court has "defined the category of infractions that

violate 'fundamental fairness' very narrowly."  *Id.* (citation omitted).  A petitioner

23

challenging an omitted instruction has an even heavier burden than if he were challenging an erroneous instruction because an omission is "less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737 (1977).

### 1.      Reckless discharge of a firearm instruction.

Petitioner first challenges the trial court's refusal to provide the jury with an instruction on careless, reckless, or negligent use of a firearm with injury or death resulting, as a lesser offense of the assault crimes charged. The Michigan Court of Appeals rejected this challenge because careless, negligent or reckless discharge of a firearm is a cognate lesser offense of the assault crimes charged and not a necessarily-included lesser offense.  The court explained:

> MCL 768.32(1) "only permits instructions on necessarily included lesser offenses, not cognate lesser offenses." *People v Reese*, 466 Mich 440, 446; 647 NW2d 498 (2002); *People v Cornell,* 466 Mich 335, 356; 646 NW2d 127 (2002). A cognate lesser offense shares some common elements with, and is of the same nature as, the greater offense, but also has elements that are not found in the charged offense. *Id.*, at 357; *People v Lowery*, 258 Mich App 167, 173; 673 NW2d 107 (2003). In contrast, all elements of a necessarily lesser included offense are contained within the greater offense, and it is impossible to commit the greater offense without first committing the lesser offense. *Cornell, supra* at 357; *People v Bearss*, 463 Mich 623, 632-633; 625 NW2d 10 (2001).

*People v. Williams*, 2006 WL 2987625 at *7.  Under Michigan law, reckless or negligent discharge of a firearm is not a necessarily-included offense of assault with intent to commit murder and a jury instruction thereon would not be permitted.  *People v. Lowery*, 258 Mich. App. 167, 173-74 (2003) (citing *People v. Cornell*, 466 Mich. 335,

24

359 (2002)).  Careless, reckless or negligent use of a firearm, Mich. Comp. Laws
§ 752.861, requires that a firearm discharge cause death or injury, neither of which is an
element of felonious assault, assault with intent to murder, or assault with intent to do
great bodily harm less than murder, Mich. Comp. Laws §§ 750.82-750.84, respectively.
"[T]he views of the state's highest court with respect to state law are binding on the
federal courts."  *Wainwright v. Goode*, 464 U.S. 78, 84, 104 S. Ct. 378, 382 (1983).
Therefore, this Court concludes that the trial court's refusal to include the requested jury
instruction did not render Petitioner's trial fundamentally unfair.  Petitioner is not entitled
to habeas relief on this claim.

### 2.    Mitigating Circumstances

Petitioner also challenges the trial court's refusal to provide the jury with an
instruction on mitigating circumstances with regard to the assault with intent to commit
murder charge.  The trial court erroneously stated several times in response to defense
counsel's request for a mitigating circumstance instruction that words are not adequate
provocation as a matter of state law.  (2/25/05 at 5-7.)  While it misstated state law, the
trial court also found inadequate provocation as a factual matter.  The Michigan Court of
Appeals similarly found inadequate provocation to support a mitigating circumstances
instruction and rejected Petitioner's challenge:

> We also disagree with defendant's argument that the trial
> court erred in refusing to provide the jury with an instruction
> on mitigating circumstances regarding an assault with intent
> to commit murder charge.  There is no per se rule that
> insulting words may never constitute adequate provocation,
> and what constitutes adequate provocation is a question of
> fact.  *People v Pouncey,* 437 Mich 382, 391; 471 NW2d 346
> (1991).  Defendant asserts that the situation was volatile and

25

> that it is undisputed that there was a fight before the
> shooting.  Presumably, defendant is referring to his
> argument with Readus.  Although Readus admitted that he
> was mad, had "an attitude," closed his fists, and was
> prepared to defend himself, there is no evidence that he
> engaged in a fistfight with defendant or anyone else.  There
> is no evidence that any insults were exchanged, and the
> argument does not constitute adequate provocation.
> Accordingly, the trial court did not err in refusing to provide
> the mitigating circumstances jury instruction.

*People v. Williams*, *supra*, 2006 WL 2987625 at *8.

Petitioner has not pointed this Court to and this Court has not found a Supreme

Court decision holding that the failure to instruct a jury on mitigating circumstances

when the instruction has been requested and there is sufficient supporting evidence

violates a criminal defendant's rights under the Due Process Clause.  Assuming

arguendo that a constitutional right to such a jury instruction might flow from Supreme

Court precedent, *see e.g.*, *Taylor v. Withrow*, 288 F.3d 846, 852-53 (6th Cir. 2002)

(holding that the failure to instruct a jury on self-defense when the instruction has been

requested and there is sufficient evidence to support such a charge violates a criminal

defendant's due process rights despite no Supreme Court decision setting down such a

rule precisely), the state courts' factual determination that there was insufficient

evidence of adequate provocation to support a mitigating circumstance instruction was

not unreasonable within the meaning of 28 U.S.C. § 2254(d)(2).  Because there was

insufficient evidence of adequate provocation, the refusal to instruct the jury on

mitigating circumstances cannot be said to have denied Petitioner a fundamentally fair

trial, and the Michigan Court of Appeals' decision was neither contrary to nor an

unreasonable application of federal law.  Petitioner is not entitled to habeas relief on this claim.

### E.    Claim VI[5] - *Brady* Violation Based On Newly Discovered Evidence

In his final claim, Petitioner argues that the prosecutor impermissibly withheld Readus' medical records in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).  The Michigan Court of Appeals found that Petitioner failed to establish a *Brady* violation because "[t]here is no evidence that the prosecutor possessed or suppressed the medical records."  *People v. Williams*, *supra*, 2006 WL 2987625 at *10.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S. Ct. at 1196-97.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999). *Brady* is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial.

During the preliminary examination, Petitioner's counsel informed the court that he would subpoena the medical records at issue.  Throughout the trial, it was

---

[5]Pursuant to Petitioner's motion to amend, Claim V from his initial petition has been omitted.

27

undisputed that the prosecutor did not have the medical records in his possession and that defense counsel was waiting for the hospital to produce the medical records, which he subpoenaed and which were not produced until sentencing.  Given the undisputed fact that the prosecutor did not suppress or possess the medical records at issue and based on the Court's finding that Petitioner has not shown that the evidence contained in those records was exculpatory or impeaching, *see supra*, the Court concludes that the Michigan Court of Appeals' decision was neither contrary to nor a unreasonable application of Supreme Court precedent.  Petitioner is not entitled to habeas relief on this claim.

**V.      Conclusion**

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief based on the claims set forth in his petitions.

Accordingly,

**IT IS ORDERED**, that Petitioner's motion to amend his habeas petition is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED**, that Petitioner's application for a writ of habeas corpus is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Gary Williams, #314387
Lakeland Correctional Facility
141 First Street
Coldwater, MI   49036

Laura A. Cook. Esq.

28